25



FILED

1 1 2001

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JUANA MARIA LERMA DE GARCIA, | ) |
| v. | ) C.A. No. B-97-150 |
| E.M. TROMINSKI, INS DISTRICT DIRECTOR | ) |

**PETITIONER'S RESPONSE TO MEMORANDUM RELATING TO WHETHER EVIDENTIARY HEARINGS ARE APPROPRIATE, AND ADVISAL THAT SAID ISSUE NEED NOT BE REACHED IN THE CASE AT BAR**

Comes Juana Maria Lerma de Garcia, by and through the undersigned, and submits the following response to "Respondent's Memorandum Addressing Whether The Court May Conduct An Evidentiary Hearing In Habeas Corpus Proceedings." Simultaneously, Petitioner would advise the Court that, in the case at bar, she does not consider that such a hearing is necessary, in that the record of proceedings clearly establishes ineffective assistance of counsel.

However, INS appears to want it both ways herein. They assert that the case must be decided on the basis of the record of proceedings, but have filed no certified record.[1] Nonetheless, in the interest of a rapid conclusion to the case at bar, Petitioner will make that showing on the basis of the record of proceedings as filed with the Fifth Circuit in *Lerma De Garcia v. INS*, No. 97-60348, 141 F.3d 215, *reh den.* 159 F.3d 1358 (5th Cir. 1998) (herein cited, by page, as (R:__), and would hereby request that INS file certified copies thereof with this Honorable Court as well.

---

[1] Apparently, this is a new line of defense which has only just now occurred to the Respondents. That it is without merit is obvious, but irrelevant herein.

# I. BACKGROUND [2]

Juana Maria Lerma de Garcia is a native and citizen of Mexico, born June 25, 1953, In Reynosa, Tamaulipas, Mexico. (R:214). Her husband, Armando Garcia, is also a Mexican national. (R:216). Ms. Garcia entered the United States as a lawful permanent resident on or about June 30, 1981, and has resided continuously in this Country since that date. (R:281). She has six children, of whom four were born in the United States, and two are lawful permanent residents. (R:264). At some point prior to November of 1994, her husband abandoned the family, leaving Ms. Garcia to raise and support four minor U.S. citizen children. (R:259).

On or about January 28, 1994, Ms. Garcia pled guilty to possession of marijuana, between five and fifty pounds. For this offense, she was fined and placed on probation for five years. (R:269-272). [3] An Order To Show Cause was issued February 17, 1994, alleging deportability on the basis of a conviction of a controlled substance. At her hearing on April 19, 1004, Ms. Garcia admitted the factual allegations, and was found to be deportable on this basis. (R281-85). She sought relief under §212(c) of the Act, which application was filed on or about July 26, 1994. (R:262). A hearing on the merits was scheduled for November 8, 1994. (R:260), and Ms. Garcia was given written notice thereof. (R:187).

Shortly thereafter, Ms. Garcia went to Mt. Pleasant, Texas, to do migrant farmwork, with the permission of her probation officer.

---

[2] As set forth herein, the facts are as shown as of the date the record was prepared and do not reflect subsequent developments.

[3] On March 27, 1989, Ms. Garcia also pled guilty to conspiracy to harbor certain aliens within the United States, (R:205), which offense was not, at that time, grounds for deportation.

2

While she was there, she lost the written notice of her hearing date and time. She did recall, however, that the date of the hearing was November 8, 1994. (R:187-189).[4]

Ms. Garcia returned to the Valley in August of 1994, to enroll her children in school. The same week, she called Ms. Bone, to find out what else she needed for her hearing. During the weeks that followed, she had periodic contact with her attorney, but the question of the exact date of her hearing was not discussed. Shortly before the hearing date, Ms. Garcia called her attorney's office several times, but could not reach her. As further detailed in her affidavit, (R:188):

> On or about November 3rd, 1994 I started to panic because I had still not talked to Ms. Bone directly and I wanted to know when I should come to her office so that we could prepare the case. During one of my telephone calls to her office in Edinburg, Tx., one of [her] secretaries told me that the hearing was at one (1) o'clock in the afternoon. I did not question this since I had lost my advisal of the hearing notice during my trip to the North, and although I was clear that it was the 8th of November, 1994, but the hour I did not recall and depended on my lawyer and her representative to not mislead or give me wrong information.
>
> On November 8th, 1994, I along with my daughter, Diana Elizabeth Morado who was to be my witness went with me to Ms. Bones' Harlingen office and we arrived around 10:00 am. I spoke to Ms. Bone and she tole me that my court hearing was for the following day on November 9th 1994 and not on November 8th, 1994. I told her that I believed that my hearing was on the 8th of November. And she insisted that it was the following day on the 9th of November. I then told her to please check her file to determine the correct date. She then proceeded to use

---

[4] A copy of Ms. Garcia's affidavit, found at pp. 187-189 of the record, is attached hereto as Petitioner's Exhibit F.

3

the telephone and she told me she would be calling the Court to ascertain the correct date and time for my hearing. After she hung up the telephone, she then told me that my hearing was tomorrow (November 9th) at 1:00 o'clock. When she used the telephone to call I assumed either she had called the Court to determine my hearing date and time. I did not argue with her any longer and placed my faith and trust in her that my hearing was as she stated on November 9th 1994 at 1:00 PM. Further she advised me to bring my other daughter who is a student at Hanna High School.

The following day my two (2) daughters and myself appeared at the Immigration Court ready to proceed with my merits hearing. When we arrived to the hearing Ms. Bone told me that she was mistaken about my hearing date, that I had been correct when I had told her it was the 8th of November, 1994 and that she was very sorry. She also told me that she was going to appeal my case and would advise me as to the results.

In fact, the hearing had been scheduled for November 8, 1994, and when neither Ms. Garcia nor her attorney appeared, the Immigration Judge had entered an order of deportation *in absentia*.[5]

True to her word, on November 18, 1994, Ms. Bone filed a *mea culpa* motion to reopen, asserting that she had mistakenly advised Ms. Garcia of the time of her hearing,[6] and that "Respondent should

---

[5] Technically, however, the deportation order was not entered *in absentia*, for purposes of determining eligibility for reopening, since deportability had already been established, and hearing at which Ms. Garcia failed to appear was on the merits of her application for relief. *Wellington v. INS*, 108 F.3d 631 (5th Cir. 1997) (rule that in absentia determinations may only be reopened upon showing of reasonable cause did not apply to application that was deemed abandoned. Rather, normal rules for reopening apply).

[6] Actually, the error related to the *date*, not the *time* of the hearing, but this discrepancy does not affect the underlying principle that the mistake was that of counsel, not Ms. Garcia.

not be denied an opportunity to pursue a waiver of deportability because of a mistake of counsel." (R:258). In support of the motion, Ms. Bone filed the documentation which had been intended for the merits hearing, showing Ms. Garcia's ties to the United States, her tax returns, employment history, and her children's school records. She also drew attention to the fact that her husband had abandoned the family, and that she was solely responsible for their four minor U.S. citizen children. (R:211-59).

INS opposed the motion on a variety of grounds, including the fact that, to the extent that the motion was based on ineffective assistance, it did not comply with *Matter of Lozada,* 19 I&N Dec. 637 (BIA 1988). (R:194-198). The Immigration Judge denied the motion, on the grounds that, she had been advised of same at her hearing in April, 1994, Ms. Garcia should have told her attorney the correct time of the hearing. (R:191).

At that point, Ms. Garcia hired attorney Thelma Garcia, who, on February 7, 1995, filed a second motion to reopen, and request for reconsideration of the denial of the first motion. In support thereof, she filed Ms. Garcia's detailed affidavit, (Exhibit F). (R:178-183). In denying said motion, the Immigration Judge applied an incorrect standard. (R:173-74). *See, Wellington v. INS, supra.*

Ms. Garcia appealed this denial. (R:169). In support of her appeal, Ms. Garcia urged three theories. First, that having been mis-advised by one's attorney does constitute an "exceptional circumstance." She also urged that this was the wrong standard, and that, if anything, it would be the "reasonable cause" standard of former §242(b) of the Act (then, 8 U.S.C. §1252(b)). Finally, she argued that the motion should have been viewed as one involving the ineffective assistance of counsel. (R:157-165).

5

On July 8, 1995, the Board dismissed her appeal. Notwithstanding Ms. Bone's prior motion, admitting her responsibility, the Board held that Ms. Garcia had to comply with the formal requirements of *Matter of Lozada, supra,* which included the filing of a grievance against Ms. Bone. The BIA also noted the absence of a "confirming affidavit or declaration from Ms. Bone herself." (R:153).

So Ms. Garcia tried again. This time, she obtained and filed an affidavit from Ms. Bone, reiterating her error. (R:145). However, she still did not file a grievance, which was not warranted under the Texas Rules of Disciplinary Procedure, and would have constituted an unwarranted sanction. Instead of forwarding the motion to the BIA, as would have been appropriate under procedures in existence at that time, however, the Immigration Judge himself denied the motion. (R:137). Ms. Bone appealed to the Board, which again dismissed her appeal, due to the absence of a grievance against Ms. Bone. (R:121-125).

Finally, Ms. Garcia filed the requisite grievance. And on April 17, 1996, she filed a fourth motion to reopen, with documentation demonstrating that the grievance had been filed. (R:115-120). Shortly thereafter, AEDPA was enacted, and the battle over its retroactive application began. In support of her fourth motion, Ms. Garcia presented an extensive brief, (R:9-42), and several additional exhibits. (R:43-113). INS again opposed the motion, on the basis that, at the April 1994 hearing, Ms. Garcia had received notice of the hearing. (R:4-5).

On April 29, 1997, the Board denied this motion. The ineffective assistance of counsel claim was summarily dismissed, as follows:

> However, our prior decision in this case, while referencing the failure to fulfill the <u>Lozada</u>

6

```
requirements, also found that the respondent herself was
given notice of the November 11, 1995, [sic] hearing, but
did not appear.  Compare Matter of N-K- & V-S-, Interim
Decision 3312 (BIA 1997). [7]  Under these circumstances,
and in view of the respondent's statutory ineligibility
for the underlying relief being sought, [as a result of
AEDPA], the present motion is denied.
```

A timely petition for review of this order was taken to the Fifth Circuit, which was dismissed for lack of jurisdiction. *Lerma de Garcia v. INS, supra*. The instant habeas action was granted. On appeal to the Fifth Circuit by INS, it produced a ruling that AEDPA §440(d) did *not* render her statutorily ineligible for the relief sought, and a remand to determine whether there had been ineffective assistance of counsel herein.

## II.  ARGUMENT

**EVEN WHERE THE INDIVIDUAL HERSELF RECEIVED ACTUAL NOTICE OF THE TIME AND PLACE OF HER HEARING, WHERE SHE LOST HER WRITTEN NOTICE, ADVISED HER COUNSEL OF THE CORRECT DATE, AND COUNSEL INSISTED THAT SHE WAS WRONG, AND EVEN PURPORTED TO CONFIRM THAT FACT BY MAKING A TELEPHONE CALL, INEFFECTIVE ASSISTANCE OF COUNSEL HAS BEEN SHOWN.**

In its decision herein, the Board apparently confused the concepts of "reasonable cause" for Ms. Garcia's failure to appear for her hearing, and of whether she had suffered from the ineffective assistance of her counsel.

A decision of the BIA denying a motion to reopen on the grounds of ineffective assistance of counsel is reviewed under an "abuse of discretion" standard. *Lara v. Trominski*, 216 F.3d 487 (5th Cir.

---

[7]  A copy of said decision is attached hereto.

7

2000). A misapprehension of the law, or misapplication of its prior precedent, constitutes such an abuse. *Diaz-Resendez v. INS*, 960 F.2d 493 (5th Cir. 1992). To prevail in such a case, the person must show both ineffective assistance, and substantial prejudice, *i.e.*, a substantial likelihood that, but for counsel's error, he would have prevailed on the merits of his claim. See, *Miranda-Lores v. INS*, 17 F.3d 84 (5th Cir. 1994).

Said case is particularly instructive, because the petitioner therein apparently made no attempt to demonstrate, *before the agency*, that he merited relief in the exercise of discretion. As the Court analyzed the case, *id*. at 85 (footnote in original):

> In this case, proving prejudice requires the Petitioner to make a prima facie showing that had the application been filed, he would have been entitled to relief from deportation under § 212(c). See, e.g., Figeroa v. United States INS, 886 F.2d 76, 79 (4th Cir.1989) (holding that ineffective representation did not result in prejudice because alien could not establish a prima facie showing that he was entitled to a grant of asylum under 8 U.S.C. § 1158); Patel v. United States INS, 803 F.2d 804, 807 (5th Cir.1986) (finding that immigration judge's refusal to grant a motion for continuance did not result in prejudice where the alien conceded deportability and did not allege eligibility for discretionary relief). In his appeal to the Board, Petitioner did not allege any facts that would have merited the grant of relief. [FN2] Furthermore, we can not consider Petitioner's attempts to do so on appeal because our review is limited to the administrative record. See Rivera-Cruz v. INS, 948 F.2d 962, 967 (5th Cir.1991).
>
> FN2. When reviewing a § 212(c) application for deportation relief, the Board balances the "adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." Matter of

8

Marin, 16 I & N Dec. 581, 584 (BIA 1978); see also Diaz-Resendez v. INS, 960 F.2d 493, 495-96 (5th Cir.1992). Here Petitioner did not allege, to the Board, any favorable considerations.

By contrast, Ms. Garcia introduced a wealth of documentation, showing that she was solely responsible for her four, U.S. citizen children; that she had a stable work history, had paid taxes as required, and had property in the United States. Her offense was relatively minor, as shown by the amount of marijuana involved, and the fact that she was granted probation. Although she has a prior conviction for conspiracy to harbor undocumented aliens, that offense resulted from a plea agreement, at a time when it did not affect her immigration status. Both offenses are relative remote in time, and there has been no indication of further problems. She has been a lawful permanent resident for some twenty years.

In order to show that Ms. Garcia would, in all likelihood, have won her case, one need look no further than *Matter of Arreguin*, 21 I&N 38 (BIA 1995). The applicant there was convicted in federal court of attempting to smuggle over 78 kilograms of marijuana into the U.S., and was sentenced to incarceration. She was, in fact, still detained at the time her appeal was adjudicated by the BIA, and §212(c) relief was granted. She had been a resident for approximately the same period of time, also had a prior arrest involving undocumented aliens, and was also, in effect, a single mother, but her offense was far more recent. If she was granted relief, then Ms. Garcia should also merit the favorable exercise of discretion. In other words, there was substantial prejudice from the admitted error of Ms. Bone in convincing her that she was mistaken in her recollection of the date and time of her hearing.

It is therefore urged that, even upon the cold record, Ms. Garcia has demonstrated ineffective assistance of counsel, and substantial

9

prejudice. Her petition should be granted, and the case remanded to the BIA with instructions to grant her fourth motion to reopen, and remand the case for a hearing before the Immigration Judge on the merits of her application for §212(c) relief.

Respectfully Submitted,

Lisa S. Brodyaga
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

Thelma O. Garcia
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with exhibits, was personally served on Lisa Putnam, SAUSA,, on September 11, 2001.

10

```
              UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                   BROWNSVILLE DIVISION
```

JUANA MARIA LERMA DE GARCIA,       )
                                   )
v.                                 )     C.A. No. B-97-150
                                   )
E.M. TROMINSKI, INS DISTRICT       )
     DIRECTOR                      )
_____)

**EXHIBIT "F" IN SUPPORT OF**

**PETITIONER'S RESPONSE TO MEMORANDUM RELATING TO WHETHER EVIDENTIARY HEARINGS ARE APPROPRIATE, AND ADVISAL THAT SAID ISSUE NEED NOT BE REACHED IN THE CASE AT BAR**

ClibPDF - www.fastio.com

AFFIDAVIT

My name is Juana Maria Lerma-De Garcia, A36-755-377 and I have been a Permanent Resident of the United States since June 6, 1981 and hereby declare under penalty and perjury of the laws of the United States and state the following:

My address is 2414 Jeffery, Brownsville, Texas 78520. My family and I have lived at this address since on or about 1983.

On April 19, 1994 I appeared with my attorney, Ms. Polly Bone at my Master Calendar Hearing at the Immigration Court at 201 E. Jackson, Harlingen, Tx, before the Honorable Judge Ayala. My friend, Ms. Sara Cervantes also attended this Court hearing with me. At this scheduled hearing I was advised by the Court through the translator that I was to have my next scheduled hearing in court on November 8, 1994. I was also given a written notice advising me of my next scheduled hearing.

On May 25, 1994, my family and I decided to migrate North to do farmwork. We went to Mt. Pleasant, Tx., to do this migrant farmwork. I advised my probation officer that I would be leaving the County and that I needed permission to travel North in search of work. This permission was granted by the official. Further I called Ms. Bone and advised that I was travelling North in search of work and that I had gotten permission to travel by my probation officer. She wished me luck and told me to contact her when I returned and for me to please not forget my next hearing date and further to contact her upon my return.

My family and I returned from Mr. Pleasant, Tx. on or about August 13, 1994 in order that my children registered and started their 1994-1995 school year timely. The same week that my family and I arrived in the Valley, I called Ms. Bone, and advised her that I was back in town and I needed to know what I needed to do to prepare my immigration case for court. She advised me that my hearing was still a bit away and that if she needed anything she would contact me at my friends' (Sara Cervantes) telephone since I had none.

Later, Ms. Bone communicated with me by letter advising me to obtain supporting documentation for my 212(c) hearing. A day after receiving this letter from Ms. Bone I called her to get a clarification on some of her requests. She cleared up my questions and further told me not to forget my hearing date in November. I told her I was aware of my hearing date. But she did not mention the day and in my mind I remembered

November the 8th, 1994. I called Ms. Bone to discuss my case on several occassions, but because of her busy schedule I was never able to talk to her directly. I would only leave messages to have her return my call. On or about November 3rd, 1994 I started to panic because I had still not talked to Ms. Bone directly and I wanted to know when I should come to her office so that we could prepare the case. During one of my telephone calls to her office in Edinburg, Tx., one of secretaries told me that the hearing was at one (1) o'clock in the afternoon. I did not question this since I had lost my advisal of the hearing notice during my trip to the North. and although I was clear that it was the 8th of November, 1994, but the hour I did not recall and depended on my lawyer and her representative to not mislead or give me wrong information.

On November 8th, 1994, I along with my daughter, Diana Elizabeth Morado who was to be my witness went with me to Ms. Bones' Harlingen office and we arrived around 10:00 am. I spoke to Ms. Bone and she told me that my court hearing was the following day on November 9th 1994 and not on November 8th, 1994. I told her that I believed that my hearing was on the 8th of November. And she insisted that it was the following day on the 9th of November, 1994. I then told her to please check her file to determine the correct date. She then proceeded to use the telephone and she told me she would be calling the Court to ascertain the correct date and time for my hearing. After she hung up the telephone, she then told me that my hearing was tomorrow (November 9th) at 1:00 o'clock. When she used the telephone to call I assumed either she had called the Court to determine my hearing date and time. I did not argue with her any longer and placed my faith and trust in her that my hearing was as she stated on November 9th 1994 at 1:00 PM. Further she advised me to bring my other daughter who is a student at Hanna High School.

    The following day my two (2) daughters and myself appeared at the Immigration Court ready to proceed with my merits hearing. When we arrived to the hearing Ms. Bone told me that she was mistaken about my hearing date, that I had been correct when I had told her it was the 8th of November, 1994 and that she was very sorry. She also told me that she was going to appeal my case and would advise me as to the results.

    Thereafter I called her office several times to inquire about my appeal and her secretary advised me that I could not talk to her because of her busy schedule.

    The next communication that I received was from INS with a bag and baggage letter advising me that I must surrender myself to be deported on the 7th of February, 1995.

    I immediately called Ms. Bone who then informed me that my appeal was denied and that she was sorry. She never informed me that I had a right to appeal the denial of my Motion to Reopen. Had I been advised of this right I would

01

have proceeded with this procedure.

FURTHER AFFIANT SAYETH NOT.

February 7, 1995    X _____
                      JUANA MARIA LERMA - DE GARCIA

0183

# In re N-K- & V-S-, Applicants

Decided March 13, 1997

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A claim of ineffective assistance of counsel can, if the applicant meets the requirements set forth in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), form the basis of a successful motion to reopen exclusion proceedings where the applicant was ordered excluded in an in absentia hearing.

FOR THE APPLICANT: Robert B. Jobe, Esquire, San Francisco, California

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: James S. Stolley, Jr., Assistant District Counsel

BEFORE: Board Panel: SCHMIDT, Chairman; HURWITZ, ROSENBERG, Board Members.

ROSENBERG, Board Member:

In separate decisions dated March 14, 1991, the Immigration Judge found the applicants excludable, determined that they had failed to establish eligibility for any form of discretionary relief, and ordered them excluded from the United States. No appeal was taken.

On June 10, 1991, the applicants, through newly-retained counsel, moved to reopen their exclusion proceedings in order to explain their absence at the prior proceeding, which they claimed to have had no notice of, and to request a change of venue from Los Angeles to San Francisco. In a decision dated June 28, 1991, the Immigration Judge denied the motion, deciding that the notice of hearing served on their "attorney of record" was legally adequate notice to the applicants.

The applicants appealed the Immigration Judge's denial of their motion to reopen and moved for a change of venue. On appeal, they explained that their prior counsel has been retained for the limited purpose of arranging their release from Immigration and Naturalization Service custody, and that there was no agreement that he would represent them at any future proceeding.

They were unaware that the attorney had been given notice of the March 14th hearing, that such a hearing took place, and that he had appeared on their behalf at that proceeding.

By decision dated September 13, 1994, we dismissed the appeal and denied the motion to change venue. We decided that the Immigration Judge noted in his reason for their failure to appear, that their attorney had not notified them of the date of hearing, was not a reasonable explanation for their failure to attend the hearing.

We noted that to the extent the applicants were claiming that they received ineffective assistance of counsel from their prior attorney, they had not followed the procedures for supporting such a claim as set forth in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988). As the Immigration Judge noted in his decision, notice to an attorney of record constitutes notice to the alien. *See* 8 C.F.R. § 292.5(a) (1991). We pointed out that there is no "limited" appearance of counsel in immigration proceedings, and that because the attorney never withdrew from the case, he remained the applicants' attorney of record. *See Matter of Velasquez*, 19 I&N Dec. 377 (BIA 1986). Furthermore, we found the applicants' contention that they were only represented by former counsel through the time of release from Service custody "unpersuasive, if not incredible," noting that the attorney actually appeared at the hearing claiming to be the applicants' representative.

By motion dated September 10, 1996, and received on September 25, 1996, the applicants moved the Board to reopen based on their motion to reopen pending our decision on their motion to reopen. When the basis for a motion to reopen is that the Immigration Judge erroneously held an in absentia hearing, the alien must establish reasonable cause for his or her absence from the proceedings. Section 242(b) of the Immigration and Nationality Act, 8 U.S.C. § 1252(b) (1994); *Matter of Haim*, 19 I&N Dec. 641 (BIA 1988); *Matter of Nafi*, 19 I&N Dec. 430 (BIA 1987). If the alien shows reasonable cause for his failure to appear, the motion will be granted; if he does not, the motion will be denied. *Matter of Ruiz*, 20 I&N Dec. 91 (BIA 1989).

The applicants' motion to reopen before the Board is based on an allegation of ineffective assistance of counsel. "Ineffective assistance of counsel in a deportation proceeding is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case. One must show, moreover, that he was prejudiced by his representative's performance." *Matter of Lozada, supra*, at 638 (citations omitted); *see also Matter of Grijalva*, 21 I&N Dec. 472 (BIA 1996) (noting that ineffective assistance of counsel can amount to "exceptional

## I. PROCEDURAL BACKGROUND

## II. MOTION TO REOPEN BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL

circumstances" within the meaning of section 242B(f)(2) of the Act, 8 U.S.C. § 1252b(f)(2) (1994)); cf. *Matter of Rivera*, 21 I&N Dec. 599 (BIA 1996) (finding that the alien had failed to show exceptional circumstances where she did not meet all of the *Lozada* requirements).

In *Lozada*, we laid out the requirements an applicant must meet in order to support a claim of ineffective assistance of counsel. First, the motion should be supported by an affidavit of the allegedly aggrieved applicant attesting to the relevant facts. Second, before the allegation is presented to the Board, the former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to respond should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect "whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not." *Matter of Lozada, supra*, at 639; *see also Matter of Rivera, supra*.

The applicants in this case have met the "high standard" we announced in *Lozada*. First, the female applicant provided a detailed declaration supporting her claim of ineffective assistance of counsel. This declaration states that the applicants never received notice of the hearing from former counsel or anyone else. It also states their understanding that the attorney was retained for the limited purpose of arranging their release from custody and that there was no agreement that he would represent them at any future proceeding.[1]

Second, prior counsel was informed by letter of the allegations against him, and his reply indicates that he believed that his role as attorney was "limited to handling the exclusion matter up to the release from INS custody, and did not extend to asylum or any other subsequent work."[2] Finally, the record reflects that the female applicant filed a complaint against former counsel with the State Bar of California.

For these reasons, we conclude that the applicants have satisfied the requirements of *Matter of Lozada*. We find that the record supports their contention that they were prejudiced by the actions of their former counsel and were prevented from presenting their case. This was a reasonable cause for their failure to appear, and we therefore grant the motion to reopen. The motion to stay deportation until we decide the motion to reopen is now moot.

**ORDER:** The motion to reopen is granted and the case is remanded to the Immigration Court in San Francisco, California, for further proceedings.

---

[1] The Notice of Entry of Appearance as Attorney or Representative Before Office of the Immigration Judge (Form EOIR-28) filed by former counsel indicates that it was "submitted in connection with bond-out only, and expires in 14 days."

[2] The attorney's stated belief that he only represented the applicants for a certain phase of their case does not explain why he appeared at their hearing without them and presented himself as their representative. Nor does it reflect an understanding of the well-settled principle that there is no "limited" appearance of counsel in an immigration proceeding. *See Matter of Velasquez, supra*. However, it does support a finding that the assistance the applicants received from him was ineffective